DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Steven Mileski, et al., | ) | |
| | ) | CASE NO. 5:05 CV 1192 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| City of Barberton, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Before the Court is a motion for summary judgment filed by the defendants (Doc. No. 26), plaintiffs' memorandum in opposition (Doc. No. 37), defendants' reply (Doc. No. 39), and plaintiffs' sur-reply (Doc. No. 43).  For the reasons discussed below, the motion for summary judgment  is granted as to the sole federal claim.  The state claims are dismissed without prejudice.

## I.  BACKGROUND

### A.  The Complaint and Initial Proceedings in the Case

On May 10, 2005, plaintiff Steven Mileski ("Mileski'), a Barberton employee, and his wife, Susan Mileski, filed their Complaint alleging deprivation of constitutional rights, pursuant to 42 U.S.C. § 1983, as well as state law claims of abuse of process, intentional infliction of emotional distress, slander *per se*, and slander, in connection with an investigation of Mileski's residence as it related to a requirement for his employment with the City.  (Doc. No. 1).  This initial complaint alleged that the defendants, acting under color of state law, deprived the

(5:05 CV 1192)

plaintiffs of their rights under the "fourth, fifth, sixth and eighth amendments to the United

States Constitution[.]"  (Compl. ¶ 2).

On May 25, 2005, just after the Court scheduled the Case Management Conference,

plaintiffs moved to amend so as to make corrections to parties misidentified in the body of the

Complaint.  This motion to amend was itself amended on June 2, 2005.  (See Doc. Nos. 10, 12).

The Court granted the motion to amend, along with a subsequent motion to continue the CMC to

July 22, 2005.

On June 9, 2005, the plaintiffs filed their First Amended Complaint (Doc. No. 16) which

continued to allege deprivation of rights under the same four constitutional amendments, as well

as the same state law claims.

About two weeks later, on June 23, 2005, plaintiffs filed another motion to amend,

seeking to amend the First Amended Complaint "to conform more clearly with the evidence and

facts of this case."  (Doc. No. 18).  This motion was granted and the plaintiffs filed what is now

the current pleading, the Second Amended Complaint (Doc. No. 19).

In the Second Amended Complaint (hereafter "Complaint"), plaintiffs allege but one

federal claim under 42 U.S.C. § 1983, namely, "deprivation of legal rights, under color of law,

pursuant to the fourteenth amendment to the United States Constitution, the violation of

substantive and procedural due process of law[.]"  They also allege state claims of intentional

(5:05 CV 1192)

infliction of emotional distress, slander *per se*, and slander.[1]  Defendants filed their Answer on

June 29, 2005.  (Doc. No. 20).

The Complaint is not a model of clarity.  However, one paragraph in plaintiffs' response

to the motion for summary judgment does seem to adequately sum up the gravamen of the

Complaint:

> The complaint alleges that the City of Barberton, by and through the
> named Defendants, while acting under color of state law and custom,
> intentionally, maliciously, in bad faith, in a wanton and reckless manner, and with
> complete and deliberate indifference subjected Steve Mileski to the deprivation of
> his rights, privileges and immunities secured by the United States Constitution
> and the laws of the United States including but not limited to those protected by
> the fourteenth amendment.  (Document 19 at para. 32).  Defendant Pfeiffer, while
> acting as a Lieutenant and the Chief of the Detective Bureau of the City of
> Barberton, intentionally deprived Steve Mileski of his constitutional rights by
> subjecting him to a criminal investigation in violation of the laws and provisions
> of the Constitution of the United States.  *Id*. at para. 33.  Defendant Macko, while
> acting as the City of Barberton Law Director, intentionally deprived Steve
> Mileski of his constitutional rights by subjecting him to a criminal investigation in
> violation of the laws and provisions of the Constitution of the United States.  *Id*.
> at para. 33.  Defendant Kallai, while acting as the City of Barberton Chief of
> Police, intentionally or with reckless disregard failed to supervise and oversee the
> other named Defendants.  *Id*.

(Doc. No. 37 at 2-3).

The Court, therefore, construes the Complaint, especially in light of the above-quoted

paragraph <u>and</u> ¶ 2 of the Complaint,[2] as alleging that, because defendants Macko and Pfeiffer

---

[1]  Plaintiffs have, by this amendment, abandoned any claims under the fourth, fifth, sixth
and eighth amendments, as well as their state law claim of abuse of process.

[2]  Paragraph 2 of the Complaint states:

> Plaintiffs bring this action pursuant to the United States Constitution and
> 42 U.S.C. Section 1983, resulting from their deprivation of legal rights, under

(continued...)

3

(5:05 CV 1192)

subjected Mileski[3] to a criminal investigation, he was deprived of his fourteenth amendment rights to substantive and/or procedural due process.[4]

The Court conducted the CMC on July 22, 2005 and opened discovery at that time. Thereafter, the Court conducted a status conference on September 26, 2005 and set deadlines for briefing summary judgment motions on the issue of qualified immunity.  (See Doc. No. 25).

Defendants timely filed their summary judgment motion, which addresses not only the question of qualified immunity, but also the merits of the federal claim.  Plaintiffs responded with their argument that qualified immunity was not applicable.  They, too, argue the merits of the constitutional claim.[5]

---

[2] (...continued)
color of law, pursuant to the fourteenth amendment to the United States Constitution, the violation of substantive and procedural due process of law, and the laws of the State of Ohio.

[3] Although there are two plaintiffs, the bulk of the allegations relate to plaintiff Steven Mileski.  Therefore, throughout the remainder of this opinion, the Court will usually refer to "plaintiff," in the singular, meaning "Steven Mileski."

[4] Even though the defendants make mention of the fourth amendment in their motion for summary judgment, the Court concludes that, since the fourth amendment allegations were removed from the Complaint as it was amended repeatedly, any fourth amendment claim has been abandoned in favor of a sole claim under the fourteenth amendment.

[5] In addition to the motion for summary judgment, the record contains the depositions of both plaintiffs, as well as the deposition of defendant Macko.  (See Doc. Nos. 28, 29, 34).  The parties have also filed the record from arbitration proceedings which were conducted under the controlling collective bargaining agreement.  (See Doc. No. 35).  Portions of this arbitration record were subsequently sealed upon plaintiff's motion.

(5:05 CV 1192)

**B.     The Facts Underlying the Complaint**

Mileski is a fire fighter/paramedic for the City of Barberton.  Barberton has a residency requirement for its employees.  Section 254.04 of the City's Administrative Code prohibits appointment of any person to a full- or part-time City position "unless he or she resides within a fifteen mile radius of the flag pole bearing the American flag in front of the Barberton City Hall for the period during which he or she occupies such position for the City, provided, however, that the provisions of this section shall not apply to persons occupying positions for the City as of October 10, 1976."  There is no dispute that Mileski knew about the residency requirement.

On July 16, 2003, the City's Human Resource Department received an anonymous letter suggesting that Mileski did not live inside the 15-mile radius.  On July 22, 2003, the Department received an anonymous e-mail stating that Mileski was living in Kent, Ohio at 681 Rustic Knoll Drive.  There is no dispute that this address would not satisfy the residency requirement.  In fact, at her deposition, Mrs. Mileski testified that she and Mileski discussed the matter before they had the home built on Rustic Knoll Drive; she stated it was Mileski's view that they should not seek any waiver because that "just was not a battle to be won."  (Susan Mileski Dep., Doc. No. 29-2 at 13).  It is undisputed that no exception has ever been made to the residency requirement for City employees.

Lisa Miller, the Human Resources Director, contacted Mileski and asked him to discuss this with her as soon as possible.  Mileski had a lawyer send a letter on his behalf.  The letter, dated August 21, 2003, states that Mileski lives at 1150 Leonard in Kent, Ohio, "the same residence that was approved by the City upon Steven's date of hire in 1994." (Doc. No. 35-10,

5

(5:05 CV 1192)

pp. 4-5).  The letter also stated that Mileski's automobile registration and insurance have the

Leonard Street address; that Mileski is listed in the Portage County telephone book as being at

that address and his telephone bill is sent there; that Mileski's City paychecks and W-2

statements are sent to that address; that his water and electric bills and mortgage statements are

all sent to the Leonard Street address; and that the residence located at that address is fully

furnished, with working appliances and food in the cupboards and refrigerator.

Defendants state in their motion:  "Not satisfied with Plaintiff's counsel's response, the

matter was referred to the Law Department for review."  (Doc. No. 26, at 4).  The Law Director

was defendant Gregory Macko ("Macko").  Macko had been a City police officer prior to

becoming Law Director in 1998; in fact, he went to law school at night while employed as an

officer.  (Macko Dep., Doc. No. 34-2 at 6-7).  Macko conducted some legal research and

decided that, if Mileski were indeed living outside the 15-mile radius, theft-in-office charges

against him were a possibility.  (Macko Aff., Doc. No. 26-2, ¶ 4).

Macko contacted defendant William Pfeiffer, who was in charge of the City's Detective

Bureau, "for the purpose of having him conduct a criminal investigation."  (Id., ¶ 5).[6]  Pfeiffer

did investigate.  He requested public records, conducted surveillance, and interviewed neighbors.

He obtained criminal investigative subpoenas to utility companies.  He asked for and received

---

[6]  Apparently Pfeiffer was no stranger to Mileski.  At the time Mileski originally applied
for City employment, he sought positions in either the police or fire departments.  Pfeiffer was
assigned to conduct the routine investigation relating to Mileski's police department application.
(Arbitration Transcript ("ATR"), Doc. No. 35 at 63).  Pfeiffer recommended that Mileski not be
hired by the Police Department.  He admitted to being fairly free about voicing his opinion that
"it was a mistake for the City of Barberton to have hired Steve Mileski[.]"  (Id. at 64).

(5:05 CV 1192)

address information from the Mileski children's school.  The investigation revealed that Mileski spent the night at the Rustic Knoll Drive address, at least on five of the dates when Pfeiffer conducted surveillance.  Pfeiffer's investigative report is dated September 23, 2003.  (ATR, Exh. C).  Following Pfeiffer's investigation, Macko "concluded that although there was probable cause, a conviction was not likely."  (Id.).  No theft-in-office charge was ever brought against Mileski.

Apparently, Lisa Miller, the Human Resources Director, also received Pfeiffer's investigation report.  She believed it proved that Mileski resided at the Rustic Knoll Drive address.  (ATR at 200-01).  On January 6, 2004, Mileski was given written notice of a meeting scheduled for January 13, 2004.  The notice advised Mileski of his right to appear and respond to the allegation that he was in violation of the residency requirement.  Mileski did appear, with union representatives.  Also in attendance were Law Director Macko, Director of Public Safety Leon Ricks, Human Resource Director Miller, and someone Mileski identifies as "Mrs. Hornacek." [7]  (Mileski Dep., Doc. No. 28 at 20).  Mileski refused to make any statement on his own behalf at that meeting; he claims he was advised by the union lawyer not to speak.  (Id.).  Within 20 minutes of the conclusion of that meeting, Mileski was handed a letter of termination.  The termination decision was made by Ricks.

---

[7]  Lisa Miller claims to have left her job with the City on January 12, 2004 to assume a position as the Executive Director of the Human Resource Commission for Summit County, Ohio.  She must have been mistaken as to the precise date because there seems to be no dispute that she was at this meeting on January 13, 2004.

(5:05 CV 1192)

Mileski filed a grievance through his union.  The grievance proceeded to binding arbitration.  On October 4, 2004, the arbitrator reversed the termination decision and awarded reinstatement with back pay, seniority and benefits.

## II.  DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 .  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." Reid

(5:05 CV 1192)

v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc.,

747 F.2d 209, 215 (6th Cir. 1984)); but see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004)

(noting that a so-called "sham" affidavit need not be disregarded if there is "independent

evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff.'"  Street v. J.C.

Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477

U.S. at 252).

    In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is

the need for a trial -- whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party."  Anderson v. Liberty Lobby, 477 U.S. at 250.  Put another way, this Court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he

conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material

fact that preclude the grant of summary judgment").


**B.      Discussion**

    "[I]n any § 1983 action the initial inquiry must focus on whether the two essential

elements to a § 1983 action are present: (1) whether the conduct complained of was committed

9

(5:05 CV 1192)

by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981).[8]

Even if there is a constitutional violation, state actors performing discretionary functions may be still be immune from liability for damages if the right violated was not clearly established at the time.  Harlow v. Fitzgerald, 457 U.S. 800 (1982) (government officials performing discretionary functions are shielded from liability for damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known).

Here, there can be no doubt that the actions complained of by Mileski were taken by individuals and/or entities acting under color of state law.  The issues for this Court's resolution on summary judgment are: (1) whether there is any constitutional violation alleged [9] and, if there is, (2) whether these defendants are entitled to qualified immunity.

The Court has carefully read the Complaint, which alleges in very general terms violation by the defendants of plaintiff Mileski's "civil rights," and "legal rights . . . pursuant to the

---

[8]  In Parratt, the Supreme Court held that the negligently-caused loss of a prisoner's property constituted a "deprivation" under the Due Process Clause.  451 U.S. at 536-37.  The Supreme Court has since overruled that holding, now holding that only intentional, not negligent, acts can form the basis for recovery under § 1983.  See Daniels v. Williams, 474 U.S. 327 (1986).  However, Parratt's articulation of the statutory elements of a § 1983 claim remains unchanged.

[9]  Plaintiff devotes a considerable amount of his memorandum in opposition to the summary judgment motion arguing that there is municipal liability.  However, if there is no constitutional violation, municipal liability would be irrelevant.  Therefore, the Court must first address whether there is any constitutional violation properly alleged.

(5:05 CV 1192)

fourteenth amendment," as well as "the violation of substantive and procedural due process of law" (Doc. No. 19, ¶¶ 1, 2), without ever specifying which protected right or rights were violated.  In the Complaint, Mileski repeatedly refers to being subjected to "illegal and criminal misconduct[.]"  (Id., ¶¶ 32, 33, 34).  Of course, "illegality" is not the equivalent of "unconstitutionality" and all "misconduct" is not necessarily "unconstitutional" in nature.  Therefore, the Court has struggled to understand what constitutes the basis of plaintiff's federal claim.[10]

  The memorandum in opposition to the motion for summary judgment (Doc. No. 37) clarifies Mileski's position somewhat.  There he argues that he has been deprived of his fourteenth amendment substantive and procedural due process rights.  Specifically, in a section of the memorandum captioned "Deprivation of the Plaintiffs' Constitutional Rights by the Individual Defendants,"  he raises two arguments: (1) that he was deprived of a "protected liberty interest in his good name and reputation that was damaged by acts of the Defendants resulting from his termination" (Doc. No. 37 at 16); and (2) that he was deprived of his "substantive due process interest against the excessive abuse of power without any reasonable justification in the service of a legitimate governmental interest or objective."  (Doc. No. 37 at 19).  After the defendants argued in their reply brief (Doc. No. 39) that plaintiffs had abandoned

---

[10]  The Court has construed the Complaint and plaintiff's briefing relating to the summary judgment motion as broadly as possible, so as to address all possible claims, notwithstanding the vagueness of the Complaint.

11

(5:05 CV 1192)

any claim of deprivation of privacy,[11] plaintiffs filed a sur-reply (Doc. No. 43) asserting that there <u>was</u> such a claim.

### 1.  Fourteenth Amendment Substantive Due Process Claim

The Fourteenth Amendment provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. The due process clause contains both a procedural and a substantive component.

Plaintiff argues specifically that he has a protected substantive due process interest not to be subjected to "excessive abuse of power without any reasonable justification[.]" (Doc. No. 37 at 19).  He relies on <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998), in making his argument that the decision to investigate his residency, with an eye toward possible theft-in-office charges, "shocks the conscience."  He argues that the defendants "made improper use of the criminal investigatory process and all its powers[,]" and that "[e]ven if one were to believe the anonymous claims made there simply was no objectively reasonable basis to believe that under any circumstances was this a criminal offense."  (Doc. No. 37 at 22).  He argues at length in defense of his living arrangements, as if he needs to convince <u>this</u> Court that he is not in violation of any residency requirement.  He also asserts that the investigation was an abuse of the City's power because "[r]esearch brings forth no cases where an individual was charged

─────────────────────

[11]  In the general factual allegations of the Complaint, plaintiff states that "[a]s part of the criminal investigation, Pfeiffer invaded the privacy of the Plaintiffs by, among other things, illegally obtaining personal records of the Plaintiffs and their children from their place of employment and school which the Plaintiffs had a reasonable expectation of a right of privacy." (Doc. No. 19, ¶ 23).  This single sentence is the only mention of privacy which the Court has found in the Complaint.

(5:05 CV 1192)

criminally for simply violating a city's municipal residency ordinance."  (Id. at 24).  Finally, he asserts that "Pfeiffer's conduct of threatening and coercing witnesses, ignoring and destroying relevant evidence supportive of [plaintiff], all was designed to injure [plaintiff] by irretrievably damaging his reputation and destroying his career."  (Id. at 25).

"Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990) (internal quotation marks omitted).  It protects only those interests "implicit in the concept of ordered liberty."  Id. (citations omitted).  The list of such rights, however, is short and not readily expanded upon.[12]  Washington v. Glucksberg, 521 U.S. 702, 720 (1997) ("we 'ha[ve] always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'")

_____

[12]  The Supreme Court has enumerated these rights as follows:

. . . In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to marry, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); to have children, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); to direct the education and upbringing of one's children, Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); to marital privacy, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); to use contraception, ibid.; Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); to bodily integrity, Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and to abortion, Casey, supra. We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment. Cruzan, 497 U.S., at 278-279, 110 S.Ct., at 2851-2852.

Glucksberg, 521 U.S. at 720.

13

(5:05 CV 1192)

(quoting Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).  In substantive due process cases, the Supreme Court has consistently required a "careful description of the asserted fundamental ... interest."  Glucksberg, 521 U.S. at 721 (citing cases).

In Lewis, relied upon by Mileski, the Supreme Court noted that, although "the touchstone of due process is protection of the individual against arbitrary action of government," 523 U.S. at 845-46, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " 523 U.S. at 846 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)).  The Court found a "cognizable level of executive abuse of power as that which shocks the conscience." 523 U.S. at 846.

The Sixth Circuit has held that "[a] substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience."  Perry v. McGinnis, 209 F.3d 597, 609 (6th Cir. 2000) (citing McMaster v. Cabinet for Human Resources, 824 F.2d 518, 522 (6th Cir. 1987)).  "The violation of a fundamental right, however, is necessary for a successful substantive due process claim."  Id.; see also, Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339 (6th Cir. 1992).[13]

In this case, Mileski's vague, unspecified claims of substantive due process violations do not rise to the level of a "careful description" required by Glucksberg, do not fall within the list

---

[13]  In Perry, the court concluded that, because a public employee had a claim that he had been terminated in violation of his First Amendment free speech rights, he could also make a claim that the public employer had violated his substantive due process property interest in his employment.  Perry, 209 F.3d at 609.  However, in Sutton, the court concluded that the terminated employees had only argued that they were fired without cause in violation of their contract and could not, therefore, make out a claim that their public employer had violated their substantive due process interests in their employment.  Sutton, 958 F.2d at 1350-51.

(5:05 CV 1192)

of enumerated fundamental rights encompassed by the concept of substantive due process, and do not meet the "shock the conscience" standard.

To the extent plaintiff seems to suggest that it was a conscience-shocking constitutional violation of some sort merely to have investigated him for possible theft in office on an anonymous allegation that he was living outside the required 15-mile radius, the Court disagrees. City officials have a duty to make sure employees are in compliance with the residency requirement.  Further, no criminal charges against the plaintiff ever resulted from the investigation and, even if there had been charges brought and he was later found not guilty, that would not necessarily be a constitutional violation.  See, e.g., Baker v. McCollan, 443 U.S. 137, 145 (1979) (constitution does not guarantee that only the guilty will be arrested).  Further, allegations of malice do not create any constitutional protection for an injury to reputation. Siegert v. Gilley, 500 U.S. 226, 234 (1991).

Notwithstanding Mileski's characterization of some of his "civil rights" as "substantive," even construing the facts completely in Mileski's favor, there is no substantive due process violation here.

**2.  Fourteenth Amendment Procedural Due Process Claim**

The Court turns, then, to whether plaintiff Mileski suffered, as he claims, a deprivation of his liberty interests without procedural due process.  As already noted, under the Fourteenth Amendment, one cannot be deprived of "life, liberty, or property" without due process of law.

Construing the Complaint and the summary judgment briefing as broadly as possible, the Court concludes that plaintiff's argument is that he was deprived of two constitutionally

15

(5:05 CV 1192)

protected rights, without procedural due process: (1) his liberty interest in his reputation and

good name, and (2) his liberty interest in preserving his privacy.[14]

Plaintiff has actually characterized these arguments as <u>substantive</u> due process

arguments; however, as discussed above, the termination of public employment is a substantive

due process violation only if the termination resulted from the exercise of some other

constitutional right (e.g., as in <u>Perry</u>, free speech).  Plaintiff is arguing that his termination

<u>deprived him of</u> protected liberty interests, not that his termination <u>resulted from</u> his exercise of

those interests.  That is a procedural due process claim and the Court will analyze it as such.

**a.  Liberty Interest in Reputation and Good Name**

In <u>Ludwig v. Bd. of Trustees of Ferris State Univ.</u>, 123 F.3d 404 (6th Cir. 1997), the

court discussed the concept of liberty as it pertains to reputation and good name.  It enunciated a

five-part test for determining whether an employee's liberty interest is implicated in connection

with termination from employment.  The court said:

> An injury to a person's reputation, good name, honor, or integrity
> constitutes the deprivation of a liberty interest when the injury occurs in
> connection with an employee's termination.  <u>See</u> <u>Board of Regents v. Roth</u>, 408
> U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); <u>Chilingirian v. Boris</u>,
> 882 F.2d 200, 205 (6th Cir.1989).  When a deprivation of a liberty interest of this
> kind occurs, the employee must be afforded notice and an opportunity to be heard
> to refute the charges disseminated against him.  <u>See</u> <u>Chilingirian</u>, 882 F.2d at 205
> (citing <u>Roth</u>, 408 U.S. at 573, 92 S.Ct. at 2707).  "Thus, when a 'nontenured
> employee shows he has been stigmatized by the voluntary, public dissemination

---

[14]  As properly argued by the defendants in their motion, Mileski could not make a claim
that he was deprived, if only briefly, of a property interest in his public employment because
"[p]ublic employees . . . do not enjoy a substantive due process right in public employment."
<u>DeMarco v. Cuyahoga County Dept. of Human Services</u>, 12 F.Supp.2d 715, 721 (N.D. Ohio
1998) (citing <u>Sutton v. Cleveland Bd. of Educ.</u>, 958 F.2d 1339, 1351 (6th Cir. 1992)).

(5:05 CV 1192)

of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.' " Id.  A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied. First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.  See Paul v. Davis, 424 U.S. 693, 709-10, 96 S.Ct. 1155, 1164-65, 47 L.Ed.2d 405 (1976) (injury to reputation by itself is not a liberty interest protected under the Fourteenth Amendment).  Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.  See Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Chilingirian v. Boris, 882 F.2d 200, 205-06 (6th Cir.1989); Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College, 518 F.2d 1091, 1096-97 (6th Cir.1975).  "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." Chilingirian, 882 F.2d at 205-06 n. 8.  Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities." Roth, 408 U.S. at 573, 92 S.Ct. at 2707. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.  Id.

Third, the stigmatizing statements or charges must be made public.  See Bishop v. Wood, 426 U.S. 341, 348-49, 96 S.Ct. 2074, 2079-80, 48 L.Ed.2d 684. Fourth, the plaintiff must claim that the charges made against him were false.  See Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884-85, 51 L.Ed.2d 92 (1977). Lastly, the public dissemination must have been voluntary.  See Chilingirian, 882 F.2d at 205.  If the above requirements are met, the employee is entitled to notice and an opportunity to be heard through a name-clearing hearing, id., when plaintiff has made a request for such a hearing.  See Gillum v. City of Kerrville, 3 F.3d 117, 121 (5th Cir.1993); Rosenstein v. City of Dallas, 876 F.2d 392, 395 (5th Cir.1989), rehearing granted and opinion reinstated in relevant part by, 901 F.2d 61 (5th Cir.1990).  [footnote omitted].  Such a hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." Chilingirian, 882 F.2d at 206.

123 F.3d at 410.[15]

---

[15]  In Ludwig, a basketball coach at a public university, whose employment had been terminated because of allegations that he had discriminated against students on the basis of

(continued...)

17

(5:05 CV 1192)

If plaintiff Mileski was deprived of his liberty interest in his good name and reputation, that was a clearly established right at the time. Therefore, there is no entitlement to qualified immunity.

That having been said, the Court also concludes that plaintiff cannot meet the five-part test enunciated in Ludwig. Plaintiff argues at length that he can, concluding that "the City damaged his good name and reputation in conjunction with his termination." (Doc. No. 37 at 19). Plaintiff seems to base his argument on the fact that the arbitrator, in reversing the termination, commented that "Lt. Pfeiffer wanted to be sure that he had as much negative testimony against Mr. Mileski as he could obtain." (Doc. No. 37-2, at 17). The record before this Court does suggest that Pfeiffer may have had it out for the plaintiff and was a little too free in his public criticism of the plaintiff.

However, even if the plaintiff can establish the first four elements of the Ludwig test, which he arguably can, plaintiff ignores the fifth element of the test, namely, that in order to prevail he must prove that he asked for and was deprived of a name-clearing hearing. In this case, the arbitration hearing amounted to a name-clearing hearing.[16] Plaintiff was given due

---

[15] (...continued)
national origin, filed a complaint alleging that his suspension without pay constituted a deprivation of a property interest without due process of law and that the publication of statements concerning his termination were false and also amounted to a deprivation of a liberty interest without due process of law. On a Rule 12(b)(6) motion, the district court dismissed the complaint, concluding, first, that Michigan law created no property interest in public employment and, second, that, although liberty interests were implicated, Ludwig had been granted all the process he was due with respect to those interests. The Court of Appeals affirmed.

[16] Defendants also argue that plaintiff was afforded a pre-termination opportunity to
(continued...)

(5:05 CV 1192)

process with respect to both his employment and his good name.  In fact, the process he was given actually vindicated him.

In Ludwig, the Sixth Circuit upheld dismissal of the complaint precisely because plaintiff had not met the requirement that he ask for and be denied a hearing.  There is considerable Sixth Circuit case law stating that a plaintiff must request a name clearing hearing and that request must be denied before a court can conclude that there has been a procedural due process violation.  See, e.g., Ludwig, supra; Jefferson v. Jefferson County Public School System, 360 F.3d 583 (6th Cir. 2004); Quinn v. Shirey, 293 F.3d 315 (6th Cir. 2002); Med Corp, Inc. v. City of Lima, 296 F.3d 404 (6th Cir. 2002).

The Court concludes that, there was no deprivation of Mileski's liberty interest in his good name and reputation.

**b.  Liberty Interest in Preserving Privacy**

Plaintiff has not, in fact, asserted a deprivation of any liberty interest related to privacy beyond a passing mention in the general factual allegations that his and his family's privacy was invaded by the process of investigating his residency.  However, had he made such a claim, it could not withstand the summary judgment motion.

The Supreme Court has recognized a constitutional right to privacy grounded in the fourteenth amendment which encompasses both individual autonomy and "an individual's

---

[16] (...continued)
defend himself and he refused to speak, purportedly on the advice of his Union representative. In view of the fact that there was a full-blown arbitration hearing which vindicated the plaintiff, the Court need not decide whether the pre-termination meeting to which defendants refer would rise to the level of a name-clearing hearing.

(5:05 CV 1192)

interest in safeguarding personal matters from public view[.]"  Kallstom v. City of Columbus, 136 F.3d 1055, 1061 (6th Cir. 1998) (citing Whalen v. Roe, 429 U.S. 589 (1977) and Nixon v. Administrator of Gen. Servs., 433 U.S. 425 (1977)).

In the instant case, the Court is hard-pressed to determine what highly confidential and/or private information was even gathered by way of the investigation, much less what part of that information is alleged to have been disseminated publicly.  In the Complaint, Mileski alleges only the "personal records of the Plaintiffs and their children [were obtained] from their place of employment and school[.]"  The record sheds no light on this allegation.  The Court cannot imagine what beyond an address would have been obtained in the context of an investigation into Mileski's residence.  Certainly an address is not the kind of "personal matter" that the constitution protects.


### III.  CONCLUSION

In view of the above discussion, the Court concludes that the plaintiffs have failed to establish any basis for recovery under § 1983, primarily because they have not established deprivation of any right, privilege or immunity protected by the Constitution or laws of the United States.  Since there is no federal claim, the Court declines to exercise its supplemental jurisdiction over any state law claim.

The Court has a sense that plaintiff Mileski was highly offended by all of what led up to his termination of employment and subsequent reinstatement by the arbitrator.  Perhaps he has a right to be offended.  Perhaps there are, indeed, viable state law claims that can be leveled

20

(5:05 CV 1192)

against these defendants.  However, this Court has concluded, after very careful review of the pleadings, the summary judgment briefing and the record before the Court that there is simply no constitutional violation entitling the plaintiffs to recovery.

Accordingly, the Court grants defendants' motion for summary judgment (Doc. No. 26) with respect to any and all federal claims.  Since the federal claim has not survived, the Court declines to rule on the merits of any state law claim and dismisses all such claims without prejudice.

IT IS SO ORDERED.


  April 4, 2006                                            *s/ David D. Dowd, Jr.*
Date                                                        David D. Dowd, Jr.
                                                           U.S. District Judge

21